## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

KEENON LADONTA THREATT,        )
                               )
          Petitioner,          )
                               )
v.                             )        1:10-cv-08009-IPJ-MHH
                               )        (1:07-cr-00058-IPJ-PWG-2)
                               )
UNITED STATES OF AMERICA,      )

## MEMORANDUM OPINION

Pursuant to 28 U.S.C. § 2255, petitioner Keenon Ladonta Threatt[1] seeks relief

from a life sentence that this Court imposed after Mr. Threatt pled guilty to various

federal drug offenses.  (Doc. 1; Crim. Doc. 209).  Mr. Threatt contends that he is

entitled to relief under the Sixth Amendment because his trial counsel was

ineffective.  (Doc. 2, pp. 8-17).  He also argues that he was deprived of federal due

process both with respect to his guilty plea and with respect to his sentencing.  (*Id.*).

The Court does not have to reach all of Mr. Threatt's arguments because the plea

agreement that Mr. Threatt signed includes a section in which Mr. Threatt agreed not

to pursue a § 2255 motion pertaining to his conviction or his sentence.  The Court has

---

[1]  Mr. Threatt's first name was misspelled in his criminal proceedings.  It is properly spelled Keenon, not Kennon.  (Doc. 7-1, p. 1, ¶ 2).

1

considered all of the arguments that Mr. Threatt has not waived and finds that Mr. Threatt has not demonstrated that he is entitled to relief.  Therefore, for the reasons explained below, the Court denies Mr. Threatt's § 2255 motion to vacate, set aside, or correct his sentence.

## I.   BACKGROUND

On February 28, 2007, a grand jury indicted Keenon Ladonta Threatt and two co-defendants, Wayne Mitchell Garrett (Threatt's cousin) and Andrew Emorris Garrett (Threatt's uncle), on various drug charges.  (Crim. Doc. 1).  A May 2, 2007, superceding indictment charged Threatt with (1) conspiracy to unlawfully possess with the intent to distribute and distribute fifty (50) grams or more of a mixture containing a detectable amount of cocaine base, more commonly referred to as "crack cocaine" and five or more kilograms of cocaine hydrochloride; (2) unlawful possession with the intent to distribute a mixture containing cocaine hydrochloride; (3) intent to distribute more than 50 grams of "crack" cocaine; and (4) criminal forfeiture of $1,000,000.00 and of real property.  (Doc. 5-1).

Seeking an enhanced penalty pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 851, the Government filed an information relating to Mr. Threatt's previous felony drug convictions.  (Doc. 5-5).  The information stated that on September 20, 2000, Threatt was convicted in the Circuit Court of Talladega County,

2

Alabama, on charges of Criminal Conspiracy to Possess Controlled Substance and

Unlawful Distribution of Controlled Substance and that each conviction constituted

a prior felony drug offense conviction.  (*Id.*).  The information provided:

> Therefore, pursuant to Title 21, United States Code, Sections 841(a)(1)
> and 841 (b)(1)(A), as charged in Counts One and Three of the
> Indictment in the above-styled and numbered case and the defendant
> having at least two prior convictions for a felony drug offense, the
> defendant, KENNON LADONTA THREATT 'shall be sentenced to a
> mandatory term of life imprisonment without release, absent any motion
> filed pursuant to U.S.S.G. Section 5K1.1 and Title 18, United States
> Code, Section 3553(e).'
>
> Therefore, pursuant to Title 21, United States Code, Sections 841(a)(1)
> and 841(b)(1)(C), as charged in Count Two of the Indictment in the
> above-styled and numbered case and the defendant having at least one
> prior conviction for a felony drug offense, the defendant, KENNON
> LADONTA THREATT, 'shall be sentenced to a term of imprisonment
> of not more than 30 years,' as to Count Two.

(Doc. 5-5, pp. 1-2).  The Government attached materials about the prior convictions

to the information.  (Crim. Doc. 46-1, 46-2, 46-3).

Threatt's trial was scheduled to begin approximately three months after the

Government filed the information.  On July 30, 2007, the first day of trial, Threatt and

the Government finalized a plea agreement. (Crim. Doc. 131).  Threatt and his

attorney signed a "Guilty Plea Advice of Rights Certification." (Crim. Doc. 130).  In

the certification, Threatt acknowledged that he, " had enough time to discuss the case

with my attorney and to discuss the facts of my case and my constitutional rights."

(Crim. Doc. 130, p. 1).   He also acknowledged that he was, "satisfied with the services of my attorney and I have no complaints as to the way he/she has handled my case." (*Id.*)

In addition to the Advice of Rights Certification, Mr. Threatt signed a plea agreement.  In it, he pled guilty to Counts 1 through 3 of the superseding indictment, and he stipulated to the entry of a $1,000,000.00 money judgment against him.  (Doc. 5-2, p. 1).  The plea agreement states that because of his prior felony convictions, Threatt faced a potential sentence of life in prison.  (Doc. 5-2, pp. 2-3) (providing that Threatt was subject to imprisonment "for not less than LIFE" in connection with Counts 1 and 3 of the superseding indictment).

In the plea agreement, Mr. Threatt expressly waived his right to appeal or to seek post-conviction relief under § 2255 with respect to his conviction or his sentence.  The agreement states:

> **In consideration of the recommended disposition of this case, I Kennon LaDonta Threatt, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me.  Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**

> **The defendant reserves the right to contest in an appeal or post-**

**conviction proceeding any or all of the following:**

   **(a)   Any sentence imposed in excess of the applicable maximum sentence(s); and**

   **(b)   Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.**

(Doc. 5-2, p. 16) (emphasis in original).

On the day that Threatt entered the plea agreement, the Court held a plea hearing. During the hearing, the Court asked Mr. Threatt if he understood the terms of the plea agreement, and the Court advised Mr. Threatt that he had to enter the agreement voluntarily. (Doc. 5-3). The Court stated:

> This is a hearing for me to determine that the plea you have said you wish to enter is a plea that you are entering knowing what you are doing and you are doing it voluntarily, and I have to ascertain that. So you will be placed under oath, which means that the answers you give me must be truthful; otherwise, you're subject to perjury charges and charges for making false statements. And, again, I want to tell you that if you want to stop during this proceeding and talk to your attorney longer or shorter or whatever, but some more, tell me and I will give you more time. I will give you and your attorney more time to talk to the assistant U.S. attorney who is representing the government in this case. And if for some reason during this proceeding you decide that you don't want to plead guilty, stop me and we will try the case. We have a jury here ready to try the case. I'm not trying to get you to do something you don't want to do. Okay?

(Doc. 5-3, pp. 2:21-3:15). The Court asked Threatt if he had questions about the purpose of the hearing. Mr. Threatt responded "No, ma'am." (Doc. 5-3, p. 3:16).

During the plea hearing, Mr. Threatt acknowledged that he read the plea documents and that his attorney read the documents to him. (Doc. 5-3, p. 4:14-16). He also confirmed that he had enough time to discuss the facts of the case with his lawyer and that he had enough time to talk to his lawyer about his constitutional rights. (Doc. 5-3, p. 4:17-22). Threatt testified that he was satisfied with the way that his attorney handled his case and that he did not have any complaints about his attorney's representation. (Doc. 5-3, p. 4:23-25). The Court advised Mr. Threatt that he had a "duty to inform the Court if something is said or done during this proceeding that [he] did not understand." (Doc. 5-3, p. 6:3-9). Threatt represented to the Court that he understood his responsibility. (Doc. 5-3, p. 6:9). The Court reviewed each charge to which Threatt was pleading guilty, and Mr. Threatt acknowledged that his lawyer explained the elements of the offenses charged in the indictment. (Doc. 5-3, pp. 6:10-7:15).

Having explained the charges, the Court turned to the applicable sentencing guidelines. When Mr. Threatt indicated that he did not understand the guidelines, the Court explained them to him. (Doc. 5-3, pp. 9-11). The Court stated that the mandatory minimum life sentence was a consequence of his prior felony drug convictions. (Doc. 5-3, pp. 7:16-8:11).

With respect to the waiver provisions in the plea agreement, the Court asked

6

Mr. Threatt if he understood that he was relinquishing his right to challenge his

conviction and his sentence.  Mr. Threatt replied, "yes."  The record states:

> THE COURT:    All right. On page 15 and 16, do you understand that
> you have given up your right to appeal and you have
> given up your right to challenge any conviction or
> sentence in a post-conviction manner including 28
> U.S. Code Section 2255 with two exceptions:  If the
> Court were to impose a sentence in excess of the
> applicable statutory maximum, you would have the
> right to appeal that or attack that by post-conviction
> motions; and if the Court were to impose a sentence
> that constituted an upward departure from the
> advisory guideline sentencing range, you could also
> attack that either in an appeal or in a post-conviction
> motion. Do you understand that you have given up
> those two rights?
>
> THREATT:      Yes.
>
> THE COURT:    Do you have any questions about that?
>
> THREATT:      No, ma'am.

(Doc. 5-3, pp. 17:12-18:1).  After this exchange, the Court asked Threatt again if he

had read the plea agreement and if he had any questions about the plea agreement.

(Doc. 5-3, p. 18:2-7).  Threatt responded that he had read the plea agreement and that

he did not have questions about the agreement.  (Doc. 5-3, p. 18:2-7).

Before the plea hearing ended, defense counsel indicated that there was some

disagreement about the factual basis for the plea agreement, but, he conceded, none

of the disputed facts was material.  (Doc. 5-3, p. 19:3-10).  The Court recessed, instructing the parties that the Court would not accept the plea unless the factual basis for the plea was accurate.  (Doc. 5-3, pp. 21:13-22:7).  After the recess, Mr. Threatt represented to the Court that he reviewed the agreement again and that the factual basis of the plea agreement was correct.  (Doc. 5-3, p. 22:1-16).  Threatt pled guilty to Count 1, 2, and 3 of the superceding indictment.  (Doc. 5-3, p. 18:8-24).

After the Court accepted the plea agreement, on August 24, 2007, Mr. Threatt filed a *pro se* motion to withdraw his guilty plea.  (Crim. Doc. 134).  The Government opposed the motion, detailing the circumstances of the plea agreement and the fact that Court gave Mr. Threatt "ample time to review" the guilty plea and advice of rights certification.  (Crim. Doc. 137).  The Government argued that in addition to the Court advising Mr. Threatt that he did not have to plead guilty and that a jury was ready to hear his case, on "three separate occasions, including just moments before resuming his plea hearing, the undersigned [Assistant United States Attorney] informed the defendant that he had a right to a jury trial, and even encouraged the defendant to take full advantage of that right."  (Crim. Doc. 137, p. 10).  The Government maintained that there was an "abundance of proof" that Threatt entered his guilty plea voluntarily and with knowledge.  (Crim. Doc. 137, p. 10).

After Threatt filed the motion to withdraw his guilty plea, his trial counsel

withdrew, and Threatt retained attorney Brett Bloomston.  (Crim. Docs. 139, 140, 143).  The Court set Threatt's motion to withdraw his guilty plea for hearing and continued sentencing. (Crim. Doc. 151).  Mr. Threatt, his cousin Aaron Jackson, and a DEA special agent testified at the hearing.  (Crim. Doc. 189, p. 38-47).  Jackson reported that Threatt told him it was his plan all along to withdraw his guilty plea. (Crim. Doc. 189, p. 45).  According to the special agent, Mr. Threatt admitted to drug trafficking.  The agent testified that he was present at two meetings at which Threatt was advised that he was facing a life sentence.  (Crim. Doc. 189, p. 39-41).  At the conclusion of the hearing, the Court denied Threatt's motion to withdraw his guilty plea, stating:  "Well, I can just tell you: I was present when this plea was taken.  I heard what the defendant said then, and I heard what he said today, and I agree with the Government.  I'm going to deny the motion."  (Crim. Doc. 189, 49:7-12).

On November 14, 2007, the Court sentenced Mr. Threatt to a mandatory minimum of life in prison.  (Crim. Doc. 190, 18:1-5).  At the sentencing hearing, defense counsel urged the Court to treat Threatt's prior felony drug convictions as a single conviction.  (Crim. Doc. 190, p. 3:9-5:24).  The Government responded that the prior offenses were separate in time and, therefore, distinct.  (Crim. Doc. 190, p. 8:1-9:22).  This Court agreed with the Government, and it rejected the Eighth Amendment cruel and unusual punishment argument that defense counsel advanced.

9

(Crim. Doc. 190, 10:16-11:6).

On November 20, 2007, Threatt filed a notice of appeal. (Crim. Doc. 170). Citing the waiver provision in the plea agreement, the Government moved the Eleventh Circuit Court of Appeals to dismiss the appeal. The Eleventh Circuit denied the government's motion to dismiss with respect to the portion of the appeal in which Threatt contested the denial of his motion to withdraw his guilty plea; however, the Court affirmed the district court's decision *sua sponte* because Threatt failed to show that this Court abused its discretion. The Eleventh Circuit granted the Government's motion to dismiss the "remaining aspects" of the appeal pursuant to the appeal waiver. (Crim. Doc. 204).

On February 17, 2010, attorney Jeffrey Brandt filed a timely § 2255 motion to vacate, set aside, or correct Threatt's federal sentence and a brief in support of the petition. (Docs. 1, 2). On March 15, 2010, Mr. Threatt submitted an affidavit in support of the motion. (Doc. 7). Threatt's initial § 2255 motion raises three grounds for relief. They are (verbatim):

1.  Mr. Threatt's Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel were violated when he entered the appeal wavier unknowingly, unintelligently, and involuntarily due to his former counsel's prejudicial errors.

2.  Mr. Threatt's Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel were violated

when the District Court applied a mandatory life sentence, as the government failed to abide by the strict requirements of 21 U.S.C. § 851, and trial counsel failed to object.

3.   Mr. Threatt asks to be resentenced as a result of changes in his criminal history that would eliminate the mandatory life sentence.[2]

(Doc. 2, p. 4).

After his attorney withdrew from his habeas proceeding, Mr. Threatt filed a *pro se* motion to amend his § 2255 motion. (Doc. 11). Mr. Threatt asks the Court to reduce his life sentence based, in part, on the Fairness in Cocaine Sentencing Act. (Doc. 10, pp. 2-7). He argues that he did not understand the drug quantities attributable to him in the plea agreement. (Doc. 10, p. 4-5).

Threatt filed another motion to amend. In it, he reiterated his ineffective assistance of counsel arguments and added that his counsel was ineffective because he purportedly failed to investigate and allegedly failed to object to the sentence enhancement under 21 U.S.C. § 851. (Doc. 16, pp. 1, 5, 9-10, 12). The Government

---

[2]The third issue that Mr. Threatt raises in his initial § 2255 motion concerns anticipated changes in his criminal history that he contends would warrant re-sentencing. In his motion, Threatt states that he has initiated actions in state court with respect to his prior felony drug convictions. He adds that he "expects the state courts will rule on his challenges to those prior felony drug convictions while this matter is pending. When that occurs, he will promptly file with the district court the documents showing the change in his criminal history and seek a new sentencing hearing." (Doc. 2, pp. 18-19). Threatt explains that he has included this issue in his § 2255 motion because it must be raised in the first § 2255 motion. No documents have been filed that reflect a change in Mr. Threatt's criminal history. Consequently, the issue is not ripe for review.

responded to Threatt's initial § 2255 motion and to his supplemental motions.  (Docs.

5, 20).   Threatt replied to both responses.  (Docs. 8, 22).   The Court took Mr.

Threatt's §2255 petition under submission on February 8, 2013.  (Doc. 23).

## II.    DISCUSSION

**A.    The Conviction and Sentence Appeal Waiver in Mr. Threatt's Plea Agreement does not Preclude his § 2255 Motion to the Extent that He Challenges the Validity of the Plea Agreement or the Waiver Provision.**

Before reaching the merits of Mr. Threatt's § 2255 motion, the Court must

consider the extent to which the waiver provision in Mr. Threatt's plea agreement

bars his motion.   By its plain and unambiguous terms, the waiver provision applies

to direct appeals or collateral attacks that pertain to Mr. Threatt's conviction or

sentence.  The plea agreement provides, in pertinent part:

> **In consideration of the recommended disposition of this case, I Kennon LaDonta Threatt, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me.  Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**

> **The defendant reserves the right to contest in an appeal or post-conviction**
> **proceeding any or all of the following:**

> > **(a)    Any sentence imposed in excess of the applicable maximum sentence(s); and**

12

> **(b)    Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.**

(Doc. 5-2, p. 16) (emphasis in original).  Though comprehensive with respect to Threatt's conviction or sentence, the  waiver provision does not preclude a § 2255 challenge to the plea agreement or to the waiver provision.

The Eleventh Circuit limits appeal and collateral attack waivers in plea agreements to their plain meaning.  For example, in *Cowart v. United States,* 139 Fed. Appx. 206 (11th Cir. 2005), the court of appeals held that a waiver provision in a plea agreement, "which stated, in pertinent part, that [the prisoner] 'voluntarily and expressly waive[d] the right to appeal her sentence and the right to collaterally attack her sentence in any post-conviction proceeding on any ground'" did not preclude her § 2255 motion to correct her sentence based on her allegation that her trial attorney was ineffective in failing to advise her adequately about her guilty plea, failing to negotiate a guilty plea to Count 2 rather than Count 1, and failing to raise an issue about her postpartum depression when she pled guilty.  *Id.* at 207.  The Eleventh Circuit reasoned,

> the language of Cowart's sentence appeal waiver provided that she waived her right 'to collaterally attack her sentence,' and did not mention a waiver of the right to attack her plea or the plea agreement itself.  Therefore, Cowart's valid sentence-appeal waiver does not

> preclude these issues, which relate to the validity of the plea or waiver
> itself.

*Id.* at 207 (citation omitted); *see also Patel v. United States*, 252 Fed. Appx. 970, 975

(11th Cir. 2007) ("the appeal waiver in Patel's plea agreement precludes both direct

appeal and collateral review of both his sentence and conviction. Patel's claim in his

§ 2255 motion, however, explicitly challenges the validity of his guilty plea . . . the

district court erred in dismissing Patel's claim based on a finding that it was barred

by the appeal waiver."); *Vasiloff v. U.S.*, 2012 WL 5379334, *2 (N.D. Ala. Sept. 4,

2012) ("under Eleventh Circuit precedent, a challenge to the validity of the plea or

plea agreement based on events leading up to the plea or plea agreement (such as

ineffectiveness of counsel) would not be precluded by the waiver in this case" which

pertained to sentencing, fines, and special assessments).

　　　Therefore, the Court considers the merits of those aspects of Threatt's § 2255

motion that implicate the effectiveness of trial counsel in causing him to accept the

plea agreement and the appeal/collateral attack waiver in the agreement.  Two of

Threatt's arguments fall under that ineffective assistance of counsel umbrella: (1) his

contention that his trial counsel's performance was deficient for leading him to enter

the appeal waiver "unknowingly, unintelligently, and involuntarily," and (2) his

assertion that his trial counsel's advice was inadequate because it "caus[ed] him to

enter a plea without full understanding of . . . the definite amount of time he would

receive." (Doc. 2, p. 8; Doc. 16, p. 1). As discussed in detail below, the Court finds that the plea agreement and its appeal/collateral attack waiver are valid; they are not the product of ineffective assistance of counsel.

The balance of Mr. Threatt's grounds for relief address the length of his sentence. Mr. Threatt contends, for example, that changes in his criminal history require resentencing and that the Court should reduce his life sentence based on the "Fairness in Cocaine Sentencing Act of 2009." (Doc. 2, pp. 18-19; Doc. 16, pp. 2-7). The Court finds that the collateral attack waiver in Mr. Threatt's plea agreement prohibits these § 2255 challenges to his sentence; however, out of an abundance of caution, the Court briefly explains below why those arguments fail.

**B.     Mr. Threatt is not Entitled to Habeas Relief Because He has not Demonstrated that his Guilty Plea or the Appeal Waiver Provision in the Plea is Invalid Because of Alleged Ineffective Assistance of Counsel.**

Mr. Threatt argues that the Court should set aside his plea agreement, or at least the appeal waiver provision in the agreement, pursuant to his Sixth Amendment right to counsel because his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a movant must establish: (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that but for the deficient representation, a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668

15

(1984); *Chandler v. United States,* 218 F.3d 1305, 1312-1313 (11th Cir. 2000). The movant bears the burden of proving ineffective assistance of counsel. *Chandler,* 218 F.3d at 1315 n. 15.

*Strickland*'s reasonable representation prong, "requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment." *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004). Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but "are interested in whether the adversarial process at trial ... worked adequately." *Id.* To be unreasonable, the performance must be such that *"no competent counsel would have taken the action that his counsel did take*." *Grayson v. Thompson,* 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original, citations omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers,* 13 F.3d at 386.

The prejudice prong of *Strickland* "requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher,* 368 F.3d at 1293. In the guilty-plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Similarly, in the sentencing context, a petitioner must establish a reasonable probability that, but for counsel's deficient performance, the result of the sentencing proceeding would have been different. *See Glover v. United States,* 531 U.S. 198, 203–04 (2001).

Applying this precedent, the Court rejects Threatt's claims of ineffective assistance of counsel because he has not established that his trial counsel's performance was deficient or that he was prejudiced by the alleged deficient performance.

**1.   Mr. Threatt has not demonstrated that his trial counsel was ineffective with respect to Mr. Threatt's execution of the appeal waiver in his plea agreement.**

In his initial § 2255 motion, Threatt argues that his trial counsel was ineffective for leading him to enter the subject appeal waiver "unknowingly, unintelligently, and involuntarily." (Doc. 2, p. 8). Similarly, Threatt contends in his amended motion that "counsel was ineffective for causing him to enter a plea without the full understanding of what rights he was waiving . . . ." (Doc. 16, p. 1).

17

In making his claim, Threatt focuses on the short period of time that counsel spent with him reviewing the plea agreement.  He argues, for example, that he "spent 20 minutes with his attorney the night before the case was scheduled to go to trial. Mr. Threatt signed the agreement, including placing his signature below the waivers, at that time."  (Doc. 8, p. 2).  He states in his brief that during those 20 minutes, his attorney "did not review . . . the meaning of any of the waivers."  (*Id.*).  In the affidavit that he submitted in support of his petition, Mr. Threatt avers that during the pre-trial meeting that "lasted only about 20 minutes," his attorney "did not go over anything with me about my rights that I was waiving by pleading guilty, and he did not go over any appeal waiver with me."  (Doc. 7-1, p. 2, ¶¶ 5-6).  He adds that his attorney did not leave a copy of the plea agreement with him, so he did not have a chance to review the agreement (and presumably the waiver provisions) the night before his trial was scheduled to begin.  (Doc. 8, p. 3; *see also* Doc. 7-1, p. 2, ¶ 6).

On the day of trial, Threatt contends that his attorney spent only 10 to 15 minutes with him, and that time was devoted, in large part, to convincing Mr. Threatt to plead guilty because overnight, he had decided to go to trial.  (Doc. 8, p. 3).  Mr. Threatt acknowledges that his attorney "went over some of the rights I was waiving, like the right to have a jury trial and to hear people testify against me and cross examine witnesses.  But Mr. Tumlin did not go over the appeal waiver.  At this point,

I still had not even heard the words 'appeal waiver.'" (Doc. 7-1, p. 2, ¶¶ 7-8).[3]

Although the Court must construe Mr. Threatt's *pro se* contentions liberally,[4] the Court must view those arguments and the arguments advanced by his attorney in his initial § 2255 pleadings in the context of the entire record.[5]  The assertions that Mr. Threatt makes in his § 2255 motion and in his affidavit in support of his motion (both of which Mr. Threatt filed nearly three years after his plea hearing) and in his amended § 2255 motion (which Mr. Threatt filed more than five years after his plea hearing) contradict the information that Mr. Threatt provided to the Court in his Guilty Plea Advice of Rights Certification and at his plea hearing. In the certification, Threatt acknowledged that he, "had enough time to discuss the case with my attorney and to discuss the facts of my case and my constitutional rights."  (Crim. Doc. 130,

---

[3]  In his reply brief in support of his motion, Mr. Threatt asserts that, "at no point" during the 10 to 15 minute conversation "did [his] attorney explain the meaning of the appeal waiver, and while Mr. Threatt understood that he had entered waivers and that exceptions existed to those waivers, he did not understand the meaning of the waivers." (Doc. 8, p. 3).

[4]  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.") (citation omitted).

[5]  *See Carter v. U.S.*, 2011 WL 2434161, *7 (M.D. Ala. May 26, 2011) ("Weighing the cursory assertions in Carter's § 2255 motion against the sworn statements by Keith in his affidavit, and considering such matters in light of [the] record as a whole, this court finds that Carter fails to establish that Keith rendered ineffective assistance in this regard." ); *Dorsey v. United States*, 2009 WL 1684594, *5 (M.D. Ala. June 12, 2009) ("Weighing the cursory assertions in Dorsey's § 2255 motion against the record evidence, including Dorsey's declarations at the plea hearing, this court concludes that Dorsey fails to demonstrate that her counsel was ineffective for failing to explain to her the ramifications of her guilty plea.").

p. 1).  He also affirmed that he was, "satisfied with the services of my attorney and I have no complaints as to the way he/she has handled my case."  (*Id.*)

At the plea hearing, Mr. Threatt testified under oath and subject to penalty of perjury that he had sufficient time to review the plea agreement, that his attorney discussed the agreement with him, and that he was satisfied with his attorney's representation.  (Doc. 5-3, pp. 4:11-5:5).  The transcript of the plea hearing provides:

| | |
|---|---|
| THE COURT: | Did you go through these [plea] documents with your lawyer before you signed them? |
| THREATT: | Yes, ma'am. |
| THE COURT: | And did you read them and did he also read them to you? |
| THREATT: | Yes, ma'am. |
| THE COURT: | Have you had enough time to discuss the facts of this case with your lawyer? |
| THREATT: | Yes, ma'am. |
| THE COURT: | Have you had enough time to talk to him about your constitutional rights? |
| THREATT: | Yes, ma'am. |
| THE COURT: | Are you satisfied with the way he has handled your case for you? |
| THREATT: | Yes, ma'am. |

> THE COURT:          Do you have any complaints about anything he has done or not done in connection with him being your lawyer in this case?
>
> THREATT:           No, ma'am.

(Doc. 5-3, pp. 4:11-5:5).  With respect to the appeal waiver and the § 2255 waiver,

Mr. Threatt confirmed that he understood that he was giving up his right to appeal

and to seek post-sentencing relief with limited exceptions:

> THE COURT:          All right. On page 15 and 16, do you understand that you have given up your right to appeal and you have given up your right to challenge any conviction of sentence in a post-conviction manner including 28 U.S. Code Section 2255 with two exceptions: If the Court were to impose a sentence in excess of the applicable statutory maximum, you would have the right to appeal that or attack that by post-conviction motions; and if the Court were to impose a sentence that constituted an upward departure from the advisory guideline sentencing range, you could also attack that either in an appeal or in a post-conviction motion.  Do you understand that you have given up those two rights?
>
> THREATT:           Yes.
>
> THE COURT:          Do you have any questions about that?
>
> THREATT:           No, ma'am.

(Doc. 5-3, pp. 17:12-18:1).

"There is a strong presumption that statements made during the plea colloquy

21

are true.  Consequently, a defendant bears a heavy burden to show that his statements under oath were false." *Patel*, 252 Fed. Appx. at 975 (citations omitted).  Rejecting the petitioner's ineffective assistance of counsel argument in *Patel*, the Eleventh Circuit found that, "Patel's allegations are in direct conflict with his statements during the plea colloquy." *Patel*, 252 Fed. Appx. at 975.  The Court continued:

> during the plea colloquy, Patel stated that he was satisfied with counsel's performance. He indicated that he read, understood, and signed the written plea agreement and confirmed that counsel had reviewed the terms and conditions of that agreement with him. The court specifically questioned Patel about the appeal waiver, asking if he understood that he was giving up his right to appeal and to file a motion pursuant to § 2255. Patel stated that he understood.

*Id.* Mr. Threatt's testimony at his plea hearing is indistinguishable from the testimony that Mr. Patel provided at his plea hearing.  Mr. Threatt's testimony contradicts his argument that his trial attorney was ineffective for spending too little time with him and, more broadly, his allegation that he agreed to an appeal waiver that he did not understand because his attorney's performance was deficient.  As in *Patel*, Mr. Threatt cannot establish that "his plea and appeal waiver were involuntarily entered into based on the ineffective assistance of counsel." *Id.* at 976.

Although Mr. Threatt provided an affidavit in support of his § 2255 motion, the assertions in the affidavit "appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver." *Patel*, 252 Fed. App'x at 975.  In the affidavit, Mr.

Threatt concedes that at the plea hearing, "the court asked me about the appeal waiver. The transcript shows that the court asked me if I understood that I was giving up the right to appeal but with exceptions. I believed I understood what exceptions meant, and I answered yes." (Doc. 7-1, p. 2, ¶ 9). Mr. Threatt contends in his affidavit that he was mistaken: "I later learned from my appeals attorney that the appeal waiver meant that I was going to have a problem arguing about my sentence on appeal. This was news to me." (Doc. 7-1, p. 3, ¶ 10). Threatt suggests in his amended motion that the Court contributed to his purported belief that he would retain a broad right to appeal despite his execution of the appeal waiver. He argues that, "as the record clearly stated petitioner was advised by the Court that he did not waive his appeal at the plea hearing. Therefore the text of the signed plea is insufficient to justified (sic) an appeal waiver." (Doc. 16, p. 3).

That argument cannot be reconciled with the record. At the plea hearing, the Court explained to Mr. Threatt that the "only right you would have left, the only constitutional right you would have left, would be the right to have a lawyer represent you on appeal if that turns out to be something you wish to pursue." (Doc. 5-3, pp. 15:25-16:3). Although the statement implies that Mr. Threatt may appeal, the Court asked Mr. Threatt if he understood that he could appeal from his sentence only in two limited circumstances:

do you understand that you have given up your right to appeal and you have given up your right to challenge any conviction of sentence in a post-conviction manner including 28 U.S. Code Section 2255 with two exceptions: If the Court were to impose a sentence in excess of the applicable statutory maximum, you would have the right to appeal that or attack that by post-conviction motions; and if the Court were to impose a sentence that constituted an upward departure from the advisory guideline sentencing range, you could also attack that either in an appeal or in a post-conviction motion. Do you understand that you have given up those two rights?

(Doc. 5-3, p. 17:12-24).  Mr. Threatt responded, "Yes," and he told the Court that he had no questions about the waiver provision or any other provision in the plea agreement.  (Doc. 5-3, pp. 17:12-18:7).

Applying the standard enunciated in *Patel* and viewing the record in its entirety, the Court concludes that Mr. Threatt has failed to establish that his trial counsel's performance was deficient with respect to Threatt's execution of the plea agreement or the appeal waiver.[6]   Therefore, Threatt's ineffective assistance of

---

[6] The Court has not held an evidentiary hearing pertaining to Threatt's ineffective assistance of counsel claim because the record is sufficient to permit meaningful review of Mr. Threatt's arguments. *Patel*, 252 Fed. Appx. at 975.  In addition to the Advice of Rights Certification, the plea agreement, the transcript of Mr. Threatt's plea hearing, and the affidavit that Mr. Threatt submitted in support of his § 2255 motion, the Court has considered the transcript of the hearing that the Court conducted in conjunction with Mr. Threatt's motion to withdraw his guilty plea.  An additional evidentiary hearing would serve no purpose, given the extensive record before the Court.

counsel argument based on the allegation that he was lead into entering an appeal

waiver unknowingly fails.[7]

### 2.   Trial counsel was not ineffective for allegedly causing Threatt to enter a plea without the full understanding of "the definite amount of time he would receive."

In his amended § 2255 motion, Mr. Threatt contends that his trial counsel was

ineffective for "causing him to enter a plea" without a full understanding of "the

definite amount of time he would receive" at sentencing; however, he fails to identify

specific deficiencies to substantiate this allegation.  (Doc. 16, p. 1).  Mr. Threatt's

affidavit contradicts his suggestion that at the time that he entered the plea agreement,

he did not appreciate that he would likely receive a life sentence.  Mr. Threatt asserted

under penalty of perjury:

> If I had known that the appeal waiver and the exceptions meant that I was not going to be able to appeal a life sentence, I would not have agreed to the appeal waiver.  I would have gone to trial, lost, got a life sentence, and then been able to appeal the life sentence.

------

[7] Even if Threatt could demonstrate that his trial attorney's performance was objectively unreasonable because the attorney purportedly did not explain the appeal waiver adequately, Mr. Threatt still could not prevail because the record establishes that the Court explained the appeal waiver to him.  Therefore, Mr. Threatt cannot prove that he was prejudiced by his attorney's alleged deficient performance.  *See Andrews v. U.S.*, 2009 WL 331384, * 4 (S.D. Ga. 2009)("Thus, even if Petitioner's counsel failed to properly explain the significance of the appeal waiver, no prejudice inured to Petitioner because the Court did not fail to do so. Petitioner would have the Court ignore the Rule 11 colloquy; however, '[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity' and 'constitute a formidable barrier in any subsequent collateral proceedings.'")(citation omitted).

(Doc. 7-1, p. 3).  It is logical to infer from Mr. Threatt's statement that when he entered his plea agreement, he fully understood, based on advice of counsel or information that he received elsewhere, that he was facing a life sentence.

Even if Mr. Threatt could establish that his trial attorney did not tell him that he was likely to receive a life sentence, Mr. Threatt would not be able to satisfy the prejudice prong of his ineffective assistance of counsel claim because Threatt had available to him from a host of sources ample information about "the amount of time he would receive."  Mr. Threatt's plea agreement begins with a description of "**MAXIMUM PUNISHMENT**."  (Doc. 5-2, p. 2)(emphasis supplied).  That section of the plea agreement states that, "the Parties understand that the maximum statutory punishment that may be imposed for the crime . . . charges in COUNT ONE [and COUNT THREE], due to the defendant's three prior qualifying drug convictions . . . [is] a. Imprisonment for not less than LIFE . . ."  (*Id.* at pp. 2-3).  Threatt initialed these pages of the plea agreement.  (*Id.*).  He also signed the plea agreement beneath the following statement: "I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement."  (Doc. 5-2, pp. 19-20).

At the plea hearing, the Court reviewed the penalty provision, and the Court explained how the sentencing guidelines operate. (Doc. 5-3, pp. 7-11).  The Court specifically stated that under Count 1 "[i]mprisonment can be imposed for not less that life" and that under Count 3 the penalty was also "[i]mprisonment for not less than life."  (Doc. 5-3, pp. 7:16-18-8:3).  Threatt testified under oath that he was satisfied with his counsel, that he had not been pressured into pleading guilty, that he had read and discussed the plea agreement with his attorney before signing it, and that he understood that the Court had authority to deviate from the Sentencing Guidelines and impose a sentence that was more severe or less severe than the sentence recommended in the guidelines. (Doc. 5-3, pp. 4-11).  Counsel for the Government stated at the hearing that, "the government would recommend that the defendant be remanded into custody of the Bureau of Prisons consistent with the statutory minimum sentence of life imprisonment without release and that the defendant receive the appropriate reduction for acceptance of responsibility, which obviously under those circumstances would be meaningless."  (Doc. 5-3, p. 12).

Against this record, Threatt's contention that he entered the plea agreement without a full understanding of "the definite amount of time he would receive" rings

hollow.  The Court will not set aside the plea agreement or the appeal waiver on the basis of this unsubstantiated argument.[8]

### 3. Mr. Threatt's valid sentence waiver precludes his § 2255 argument premised upon his attorney's alleged failure to object to the manner in which the Government served the information concerning Threatt's sentence enhancements.

Mr. Threatt contends that his trial counsel was ineffective because he did not object when the Government served electronically through the CM/ECF system the § 851 notice regarding sentencing enhancements.  The sentence waiver provision in Mr. Threatt's valid plea agreement bars this argument.  Moreover, the argument is meritless.

"Section 851 itself does not specify how service shall be made." *United States v. Brown*, 346 Fed. Appx. 481, 487 (11th Cir. 2009).  Rather § 851 provides, in pertinent part:

---

[8] Similarly, in the first amendment to his § 2255 motion, Threatt mentions that he did not understand the amount of drugs attributed to him in the plea agreement.  (Doc. 10, p. 5).  Though he does not assert this proposition as an ineffective assistance of counsel claim, the Court construes it as such.  As with Threatt's other arguments, even if trial counsel were deficient in explaining the drug amounts reported in the plea agreement, there is no evidence of prejudice.  The specific drug amounts attributable to Mr. Threatt were described in the plea agreement that Threatt signed.  (Doc. 5-2).  In addition, the Court read Threatt the charges from the indictment at the plea hearing, explaining that he was charged with "conspiring with the other people that are mentioned in the indictment and with other people that are unknown to the grand jury to intentionally and unlawfully possess with intent to distribute **50 grams or more** of a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, and **5 kilograms or more** of a mixture and substance containing a detectable amount of cocaine hydrochloride." (Doc. 5-3, pp. 6:10-21; 14:1-17) (emphasis added).  Consequently, Mr. Threatt is without a § 2255 remedy.

> No person who stands convicted of an offense under this part shall be
> sentenced to increased punishment by reason of one or more prior
> convictions, unless before trial, or before entry of a plea of guilty, the
> United States attorney files an information with the court (and serves a
> copy of such information on the person or counsel for the person) stating
> in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).  The Government complied with  § 851(a)(1); it filed the information before Threatt pled guilty.  The Government filed the information on May 4, 2007.  (Doc. 5-5, p. 3).  Threatt did not enter his guilty plea until July 30, 2007.  (Doc. 5-3).  Thus, by the time Threatt pled guilty, the information had been in the record for more than two months.

Nothing in the record or in the precedent governing this issue suggests that Threatt's counsel's failure to object to electronic service of the information was unreasonable.  Even if it were, the Eleventh Circuit has "upheld § 851 notices where the government technically did not comply with § 851." *Brown*, 346 Fed. Appx. at 487-88 (internal citations omitted) (rejecting argument that service by facsimile was improper when the notice was timely filed and there was no objection to service).  Furthermore, General Order no. 2004-01, regarding the procedures and practices for case management/electronic case files (CM/ECF), expressly provides:

> If the recipient of notice or service is a registered participant in the
> CM/ECF System, service by electronic means of the Notice of
> Electronic Filing shall be the equivalent of service of the pleadings or
> other documents by hand delivery.

General Order no. 2004-01 at 9.C.  Mr. Threatt does not allege that his trial attorney did not receive notice of the § 851 information or that his attorney was not a registered user of the CM/ECF system.

The absence of proof of prejudice further diminishes Mr. Threatt's ineffective assistance argument.  The record demonstrates that regardless of how the § 851 information was served, Threatt and his counsel knew before Threatt pled guilty that the Government planned to use Threatt's prior drug convictions to enhance Threatt's sentence.  (*See* Doc. 5-3, p. 8) (referencing § 851 information, to which trial counsel responded "I know there are three priors that they say, and that certainly would qualify him under the penalties.").   Consequently, Threatt's argument fails procedurally and substantively.

### 4.   Mr. Threatt's valid sentence waiver bars his § 2255 argument based on his attorney's alleged failure to investigate.

In his amended motion, Mr. Threatt submits that but for his trial counsel's purported inadequate investigation, "the outcome of the proceeding would have been different," and he would have not have "received a life sentence instead of 10 years." (Doc. 16, p. 5).  The appeal waiver in Mr. Threatt's plea agreement prevents him from advancing this argument.  Absent the appeal waiver, the contention fails on the merits.

Threatt does not elaborate on his failure to investigate argument.  He does not explain, for example, what trial counsel allegedly failed to investigate.  His bald assertion that his attorney failed to investigate an unspecified issue will not support a constitutional claim of ineffective counsel.  *See Springer v. United States*, 2008 WL 4853609, *7 (M.D. Fla. Nov. 10, 2008) ("To prove that his trial counsel's failure to investigate amounted to a constitutional deficiency, Springer must show (a) the exact manner in which the investigation or preparation was inadequate, including any information that would have been obtained from the investigation, and (b) whether such information, assuming its admissibility in court, would have produced a different result.").  Consequently, Threatt's argument fails.

### 5.   Mr. Threatt's sentence waiver bars his § 2255 argument based on his attorney's alleged failure to notify the Court that Threatt "must be sentenced under the drugs [sic] type that carries the lowest [maximum penalty]."

Mr. Threatt argues that when an indictment charges two or more distinct drug amounts, the defendant must be sentenced under the "drug type" that carries the lowest punishment.  Trial counsel did not raise this point with the Court, which, according to Threatt, is an omission of constitutional proportion.  (Doc. 16, pp. 16-17).   Mr. Threatt waived this sentencing challenge in his plea agreement.  Substantively, the argument is unpersuasive because it rests on an improper interpretation of Eleventh Circuit precedent.

In support of his proposition, Threatt cites several cases including *U.S. v. Allen*, 302 F.3d 1260 (11th Cir. 2002). Threatt's reliance on *Allen* is misplaced. The *Allen* case, and the line of cases it follows, concern *Dale-Rhynes*[9] sentencing violations. Those violations occur when: "(1) the government alleges conduct involving multiple controlled substances in the same count; (2) there was no special verdict as to any of the substances; (3) the statutory maximum sentences for each substance differ; and (4) the defendant's sentence for the count exceeds the lowest statutory maximum sentence for the controlled substances." *United States v. Danner*, 344 Fed. Appx. 495, 499 (11th Cir. 2009) (citing *Allen*, 302 F.3d at 1269-75). In other words, error may occur when a defendant is charged with distribution of different substances, such as cocaine and marijuana, the jury charge describes the substances in the alternative (cocaine or marijuana), evidence is presented supporting distribution of both drugs, the jury returns a general guilty verdict, and then the defendant is sentenced to the cocaine maximum rather than the marijuana maximum. *See Allen*, 302 F.3d at 1269-75. None of these variables exist here.

As indicated in the plea agreement and as the Court explained at the plea hearing, the conspiracy count of the indictment (concerning two different forms of cocaine) carried only one penalty - a mandatory minimum of life in prison. (Crim.

---

[9] The term *Dale-Rhynes* comes from the combination of two different cases, *United States v. Dale,* 178 F.3d 429 (6th Cir. 1999), and *United States v. Rhynes*, 196 F.3d 207 (4th Cir. 1999).

Doc. 131; Doc. 5-3, pp. 7-8).  Mr. Threatt pled guilty to conspiring to possess with the intent to distribute both crack cocaine <u>and</u> powder cocaine.  Unlike *Allen*, there is no ambiguity as to which drug is implicated in the final  judgment; they both are.

Moreover, Count 3 of the indictment, which concerns only crack cocaine, carried a minimum penalty of a life sentence, just like the conspiracy count.  Thus, even if there were a *Dale-Rhynes* issue in this case with respect to the conspiracy count, Threatt suffered no harm because he still is subject to a life sentence under the third count of the superceded indictment to which he pled guilty.  *Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  Like the arguments before it, this one fails.

### 6.    Threatt may not obtain relief from his sentence pursuant to HR – 3245, the Fairness in Cocaine Sentencing Act of 2009.

In his first amendment to the § 2255 motion, Threatt asks for relief from his sentence under HR – 3245, the Fairness in Cocaine Sentencing Act of 2009.  (Doc. 10).[10]  The argument fails procedurally.  Because it does not fall within either of the

---

[10] "HR–3245, entitled "The Fairness in Cocaine and Sentencing Act of 2009," proposes an elimination of "cocaine base" from the U.S.Code, thereby resulting in a 1:1 ratio between crack and powder cocaine.  Congress has not enacted the bill. Although district courts may consider the crack-powder cocaine disparity as part of their sentencing analysis under 18 U.S.C. § 3552(a)(6), neither the Eleventh Circuit Court of Appeals nor the United States Supreme Court has held that a district court abuses its discretion by refusing to vary downward and impose a sentence for a crack cocaine offense based on a "'1–to–1' crack-to-power cocaine ratio." *Saintil v.* U.S., 2010 WL 5553982, *10, n. 8 (S.D. Ala. Oct. 28, 2010) (citations omitted).

two exceptions to the collateral attack waiver in the plea agreement, this sentencing argument is barred.  Moreover, the claim appears to lack a constitutional basis and is procedurally defaulted if it was not raised on direct appeal.[11]  The argument fairs no better substantively.  H.R. 3245, reintroduced in 2011 as H.R. 2242, is a prospective bill that has not been enacted.  Therefore, the bill offers no basis for a reduction of Mr. Threatt's sentence.

## III.   CONCLUSION

For the reasons set forth above, the Court DENIES Mr. Threatt's § 2255 Motion (Doc. 1; Crim. Doc. 209) and dismisses his habeas action with prejudice.  A separate final order will be entered.

DONE and ORDERED this the 27th day of March, 2013.

INGE PRYTZ JOHNSON
SENIOR  U.S.  DISTRICT  JUDGE

---

[11]  The Court is unable to determine, on the record before it, whether Mr. Threatt raised his H.R. 3245 claim on direct appeal.  Because the claim is otherwise barred and lacks merit, whether is it also procedurally defaulted is of no importance.